Price, J.
The motion filed in the lower court to discharge the attachment levied on the property of plaintiff in error, presented two important questions arising out of the provisions of the attachment law found in Sec. 5521, Revised Statutes, as amended April 26, 1898, and the same questions were in controversy in the circuit court, and have been brought to this court by petition in error.
*432 The ground upon which an attachment was demanded and issued against B. A. Hough, plaintiff in error, was, that he was at the time of filing the affidavit, a nonresident of the state of Ohio; and to bring the right to the writ within the last clause of the above section, the affidavit set out the fact that when the debts were incurred by the railroad company, Hough owned and held ninety-nine shares of its stock, and still owned them when the action was brought iii the lower court, in which writ of attachment was issued, and that the Dayton Manufacturing Company, a defendant in error, for itself and the other creditors had brought the action to enforce the liability of the various stockholders, including the plaintiff in error. It was claimed in the courts below, as it is here, that when defendant in error, The Dayton Manufacturing Company, commenced its action against the stockholders of the insolvent railroad company, and also when, by amended petition, the plaintiff in error, was made a defendant in the action, nonresidence of the state, was not a ground of attachment; and also, that the holder of stock sustained no contractual relation to the creditors of the corporation, and that the plaintiff’s debt or demand, as to the stockholders, did not arise upon contract, judgment or decree, and therefore not a claim or demand for which an attachment might be issued, on the ground of nonresidence of the state.
The first question requires an examination of the statute in force when the action was commenced in the court of common pleas, and the attachment issued in the case by the clerk of that court.
The petition was filed on the 4th of January, 1899, and was amended, bringing in the plaintiff in error March 15, 1899. The affidavit was filed, and a. writ *433 of attachment issued on the same day, and a levy was made soon after that time. From these dates, it is shown, that section 5521, as amended April 26, 1898 (93 O. L., 318), was in force.
Previous to the amendment, in stating the first ground upon which the plaintiff may have an attachment, the language was:
“1. When the defendant, or one of several defendants * * * is a nonresident of the state.”
The section, as amended in 1898, provides : “1. When the defendant, or one of several defendants, is a foreign corporation, except as provided,” etc.
By the language of that amendment, nonresidence as a ground of attachment was wholly omitted, and it thus stood and was in force when the attachment involved was procured. Taking the plain and ordinary reading of the law' then in force, there was no foundation for the w'rit of attachment, because of the non-residence of the defendant below. If we had no knowledge of previous legislation on the subject, we naturally wrould understand, that for nonresidence of the state, there existed no right of attachment, and therefore the attachment proceedings in this case, were invalid. But it is argued with some degree of force, that the words or clause as to nonresident debtors, were, or-was omitted by oversight, or through some mistake, and that the legislature did not intend, when enacting the amendment, to omit those words; and claiming this, wre are asked to construe the section as to nonresidents as if the words had been retained in the amendment. One of the arguments for this right of construction is, that the last clause of the. amended section, as did the original, provides: “But an attachment shall not be granted on the *434 ground that the defendant is a foreign corporation, or nonresident of this state, for any other claim other than a debt or'demand arising upon contract, judgment or decree, or for causing death or a personal injury, by a negligent or wrongful act” As a strong re-enforcement to this clause, we are referred to Sec. 5523, which was- not changed by the act of April 26, 1898. The latter section reads: “When the ground of the attachment is that the defendant is a foreign corporation, or a nonresident of this state, the order of attachment may be issued without an undertaking; * * *.”• It is said that this Section and the above clause quoted from Sec. 5521, cast light upon legislative intent to not sacrifice “nonresidence,” as a ground of attachment, because if such a sacrifice was intended, the quoted provisions would have been modified or changed accordingly.
We recognize the rule, that where a statute is of doubtful meaning, other statutes in pari materia, will be looked to in aid of construction. But, we cannot forget, that Sec. 5521 alone provides the ground's of an attachment; and Sec. 5523 provides in what case an undertaking may not be required, and if required, its character and mode of approval. If, on the face of the amendment in question, there is doubt of its meaning, or even as to its subject-matter, through want of proper punctuation, or, confusion in the order of words, and the doubt can be removed and the intent gathered by reference to cognate provisions, it would be our duty to use them in aid of construction to learn and carry out the legislative intent. But there is nothing doubtful, ambiguous, or confused in the wording of the provision. There is no doubt of the meaning of every word used, and that each word is in its proper place, and the en *435 tire statement of the ground of attachment perfectly clear. In such case there is no room for construction. The omission was apparently intended, because the most apt words were used to indicate it. Can this court legislate and supply a ground for attachment hot-in the statute, on the mere presumption that it was omitted by the mistake of the general assembly? A mistake of legislative judgment, or, a mistake in drawing the bill constituting the amendment? The only method known to us, by which such mistake could be shown, would be to hear parol evidence — a thing not permissible.
An illustration might be pertinent here. Up to the year 1878 the last clause of Sec. 5521, read: “But an attachment shall not be granted on the ground that the defendant is a foreign corporation, or a nonresident of this state, for any other claim than a debt or demand arising upon contract, judgment or decree.” In 1878 the general assembly added the following: “or for causing death or a personal injury by a negligent or wrongful act.” (75 O. L., 712.)
If the general assembly of 1898 had also omitted this addition, could we assume that the omission of this clause, which had a place in the statute for twenty years, was merely through mistake, and that' it was the legislative intent to include the clause?
There is another section of the attachment law that demands recognition here. It is See. 5522, naming the requisites of an affidavit for attachment. It reads:
“An order of attachment shall be made by the clerk of the court in which the action is brought, in any case mentioned in the preceding section, when there is filed in his office an affidavit, of the plaintiff, his agent, or attorney, showing:
*436 “1. The nature of the plaintiff’s claim.
“2. That it is just.
“3. The amount which the affiant believes the plaintiff ought to recover; and,
“4. The existence of any one of the grounds for an attachment enumerated in the preceding section
The preceding section (5521), as amended and in force when the action was commenced and attachment issued, did not make nonresidence of this state a ground of attachment, and while the affidavit alleges it as a basis for the writ or order, it was not one of the grounds enumerated in the preceding section. For want of such ground the clerk had no authority to issue the order. How could the clerk of the court supply an absent ground of attachment except by parol evidence as to what was intended?
It is through a sufficient affidavit in a proper action, and by virtue of positive, — not negative law, that. the court can gain jurisdiction of the property of a defendant by attachment. There was no positive law for attaching the property of a nonresident in this case, and authority for so doing is not made up by law of a negative character found in the last clause of 5521, and the provision for undertaking, as found in Sec. 5523.
In the Hathway case, 4 Ohio St., 383, the court says on page 385:
“That it is a maxim of interpretation, that, in the absence of ambiguity, no exposition shall be made, which is opposed to the express words of the instrument. The language of a statute must be taken in its usual and ordinary signification, and a court is not allowed to make an interpretation contrary to the plain and express letter of the law. Where the sense óf a statute is evident, and expressed in clear *437 and precise terms, not leading to conclusions which are absurd and at war with the manifest intention of the law, to go off upon a conjecture, and travel in quest of extraneous matters, in order to restrict or enlarge its operation, would be a dangerous and gross perversion of the law itself.”
In the case of Woodbury & Co. v. Berry, 18 Ohio St., 456, this court held:
“Where the words of a statute are plain, explicit and unequivocal, a court is not warranted in departing from their obvious meaning, although from considerations arising outside of the language of the statute, it may be convinced that the legislature intended to enact something different from what it did in fact enact.”
We quote as entirely appropriate here, the language of Brinkerhoff, J., found on pages 461 and 462 of that case, where, speaking of the statute then under consideration, he says:
“These considerations, and a comparison of the provisions of these sections of the statute as they stand with those of the statute which was superseded and repealed by the code of civil procedure, not only suggest the conjecture, but convince us of the fact, that the words, ‘other than the county/ or some equivalent phrase, must have been by accident or oversight of the draftsman of the bill to establish a code of civil procedure, or of the clerk who engrossed it, omitted before the words, ‘from which the execution issued’ in Sec. 455. But, notwithstanding all this, ita lex scripta est. The language as it stands is clear, explicit and unequivocal. It leaves no room for interpretation, for nothing in the language employed is doubtful. We are satisfied, by considerations outside of the language, that the legislature intended to *438 enact something very different from what it did enact. But it did not carry out its intention, and we cannot take the wfll for the deed. It is our legitimate function to interpret legislation, but not to supply its omissions.”
These are but the expression of many authors and authorities on the subject of statutory construction.
But it has been argued, that if this view of the law must be taken, the attachment is saved by Sec. 3 of the act of April 26, 1898, which section is: “This act shall not extend to or affect any existing debt, contract, note or judgment.”
It is very evident these words do not mean an existing cause or ground of attachment, and we think they are to be understood in connection with the first three sections of the amendatory act of April 26, 1898, which sections provide some changes in the law of exemptions from execution, and that the changes wrought by the amendment in this respect, should not extend to or affect any existing debt, contract, note or judgment. Manifestly, this saving section (3), relates to a then existing cause of action, or one reduced to judgment, and not to a cause or ground of attachment contained in the affidavit.
The fourth section of the act provides: “That this act shall take effect and be in force from and after its passage.” Unless there is an exception provided for, in this act or some general law, the former statutes, so amended are superseded. It seems to us that the exception made in Sec. 3, relates to the right or rights of exemptions, and that a then existing “debt, contract, note or judgment” should not be affected by the enlargement or change in the right of exemptions. These are proper words for the purpose, and they are not the proper words to save a ground of, or right to *439 an attachment which existed when the amendatory act was passed. If it had been intended to preserve to a creditor a ground of attachment then existing, other, further, and more apt words for that purpose would have been used. While the existing “debt, contract, note or judgment” is not affected, the former ground of attachment — nonresidence, disappeared.
We have looked still further for saving grace in this case, and we find that Sec. 79, Revised Statutes, is of no avail. It is not alleged in the affidavit that the plaintiff in error was a nonresident of this state when the act of April 26, 1898, was passed, and therefore, no then existing “cause of proceeding” * * * appears in the affidavit that invokes aid from Sec. 79.
We are of opinion that the courts below erred in sustaining the attachment in this case, and their judgments are reversed, and the attachment is discharged.
This disposition of the case renders it unnecessary to decide the other question as to the relation which a stockholder sustains to a creditor of the corporation, —whether contractual or otherwise.

Judgment reversed.

Rurket, Spear, Davis and Shauck, JJ., concur.